UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTONIO VANCE,

        Plaintiff,

        v.

AMAZON.COM SERVICES LLC,

        Defendant.

No. 24 CV 1111

Judge Georgia N. Alexakis

**MEMORANDUM OPINION AND ORDER**

Plaintiff Antonio Vance, a former Amazon employee, says that Amazon mistreated and ultimately fired him because he wanted to wear the shoes of his choice instead of the protective footwear required by Amazon's safety policy. He sued Amazon for thus violating the Americans with Disabilities Act and the Illinois Human Rights Act. Amazon now moves for summary judgment. For the following reasons, Amazon's motion is granted.

## I.    Legal Standards

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Metzler v. Loyola Univ. Chi.*, 164 F.4th 612, 616 (7th Cir. 2026); Fed. R. Civ. P. 56(a), (c). In determining whether a genuine issue of fact exists, the Court may not make credibility determinations or weigh the evidence. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). Rather, it must view the evidence and draw all reasonable inferences in favor of the

party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II.    Facts

The following facts are taken from Amazon's Local Rule 56.1 statement of undisputed material facts. [63].[1]

Plaintiff Antonio Vance worked as a fulfillment associate for defendant Amazon from October 2017 until July 2023. *Id.* ¶¶ 1, 41. In April 2022, Amazon instituted a new protective footwear policy called the "Mind Your Step" safety shoe program. *Id.* ¶ 8; *see also id.* ¶ 26. It required employees like Vance to wear steel-toe, composite, or slip-on protective footwear. *Id.* ¶ 8. That created a problem for Vance, who previously incurred a foot injury that left him unable to wear shoes with non-flexible toes. *Id.* ¶ 12.

So, in April 2022, Vance spoke with an Amazon Human Resources employee named Amy about accommodating his need for flexible-toed shoes through an exemption from the policy. *Id.* ¶ 24. The outcome of the conversation is unclear. Vance testified that he was granted an accommodation allowing him to wear the shoes of

---

[1] Vance did not respond to Amazon's Rule 56.1 statement, so the Court accepts the truth of all asserted facts with support in the record. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

his choice. *Id.* But there is no written record that Amazon granted an accommodation at that time, *id.*, and Amazon's record of the conversation, dated April 15, 2022, simply says that Vance was "looking for an accommodation for the [protective-shoe policy]," *id.* ¶ 25. Around a week after Vance's conversation with HR, an accommodations consultant from Amazon's Disability and Leave Services told Vance by email that his accommodation case was closed "so that he could proceed with the Mind Your Step shoe program first, in accordance with Amazon policy," and directed him to "reach out to [his] site HR." *Id.* ¶ 26.

Neither party has presented any evidence suggesting that Vance followed up with HR after the email. *See generally id.* at 5; [66]. Whether or not Vance was formally accommodated, the undisputed facts suggest that he was able to wear the shoes of his choice in the months following his April 2022 request. *See* [63] ¶¶ 13–16. Indeed, Vance testified as much. [63-1] at 119:16–20 ("And from April of '22 up to September of '22, I was able to wear my own shoes.").

Even so, in the six months following his request, various managers and members of the safety team approached Vance about his non-compliance with the protective-shoe policy. [63] ¶ 13. Specifically, a safety team member named Eric approached Vance about his footwear around four times, once telling him that he was "not supposed to be in the building without steel toes," and later saying to him, "Those are not steel toes." *Id.* ¶ 14. Additionally, an area manager once followed Vance, yelling "hey, hey," and then saying, "You know you're supposed to be wearing steel toes or the slip-ons that they have down there." *Id.* ¶ 16. The most dramatic

3

interaction involved a safety team member who "ran up behind" Vance and said, "You supposed [sic] to be wearing steel toes," to which Vance responded by saying he was "under accommodation." A tense exchange followed, and the team member called Vance a "motherfucker." *Id.* ¶ 15.

Vance also testified about a variety of other workplace issues. First, an area manager once told him, "You know you're not supposed to be on your phone." [63] ¶ 17. Second, on more than ten occasions, Area Managers gave away Vance's station when he did not get back from lunch at the same time as the rest of his team. *Id.* ¶ 19. Third, Vance was suspended for discussing oral sex that took place on an episode of *Love and HipHop: Atlanta. Id.* ¶ 22. Finally, Vance testified that male "water spiders" gave better pallets to non-disabled female "stowers" because they "fancied" them. *Id.* ¶ 20.[2]

Following these incidents, Vance completed a written accommodation-request form dated August 2, 2022. [1-2] at 17.[3] In it, he asked to use his own flexible shoes, [63] ¶ 28, instead of the required protective footwear, [63] ¶¶ 6–7. Amazon did not receive the request until around September 22, 2022. *Id.* ¶ 28.[4] About a week after

---

[2] Neither party offers a ready definition of the terms "water spider" and "stower," although this oversight does not affect the Court's analysis.

[3] Amazon's Rule 56.1 statement states that "On or around August 1, 2022, Mr. Vance made another verbal request for an accommodation related to his footwear." [63] ¶ 28. As support, it cites an assertion in an affidavit based on "information and belief." [63-5] ¶ 7. At this stage, the Court may not credit statements made on information and belief. *USA Gymnastics v. Liberty Ins. Underwriters, Inc.*, 27 F.4th 499, 513 (7th Cir. 2022). Nevertheless, Vance's written request, [1-2] at 17, does seem to corroborate the assertion.

[4] Amazon's Rule 56.1 statement states that Amazon received Vance's paperwork "on or around September 22, 2022." [63] ¶ 28. It again cites an assertion based on "information and

4

that, Amazon informed Vance that it could not accommodate his request and that it would initiate a leave of absence request on Vance's behalf. *Id.* ¶ 29.

Within two weeks, Amazon approved Vance for a medical leave of absence, as well as short-term disability benefits, "based on ongoing communication and review related to his accommodation request." *Id.* ¶¶ 30–31. As part of that ongoing communication, Amazon asked Vance to make an appointment for a custom-shoe fitting. *Id.* ¶ 33. Vance never did. *Id.*

Amazon approved Vance's request to extend his leave until January 31, 2023. *Id.* ¶ 34. But Amazon denied his subsequent extension request after he failed to provide supporting medical documentation that Amazon had requested five separate times in February and March 2023 by phone and email. *Id.* ¶ 36. On March 10, Amazon informed Vance by email that he could appeal the denial. *Id.* ¶ 37. It provided additional information about the documentation needed to support his appeal a few days later. *Id.* ¶ 38. In May 2023, Amazon informed Vance that he had still not submitted sufficient documentation in support of his appeal. *Id.* ¶ 40. Vance never provided the documentation, never returned to work, and was terminated for "job abandonment" on July 5, 2023. *Id.* ¶ 41.

Vance brought this suit against Amazon in state court in October 2023, and Amazon removed to federal court on February 8, 2024. *Id.* ¶¶ 45–46. About three weeks later, Vance filed an EEOC charge alleging "discrimination based on disability

---

belief," [63-5] ¶ 7, which the Court may not credit, *USA Gymnastics*, 27 F.4th at 513. Nevertheless, the assertion is supported elsewhere in the record. *See* [63-2] at 8.

and retaliation, involving issues of reasonable accommodation and discharge." *Id.* ¶ 42. The EEOC issued a right-to-sue letter the next month. ¶ 44.[5]

In this suit, Vance brings claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–213, and the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/1-101–10-105, for (1) failure to accommodate; (2) disparate treatment; (3) hostile work environment; and (4) retaliation. [1-2] at 2, 13, 16, 20, 21.[6] Amazon moves for summary judgment on all claims. [62].

## III. Analysis

Amazon seeks summary judgment on all of Vance's claims. The Court will analyze each in turn, applying the same framework to his IHRA claims as it does to his ADA claims, *see Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 569 (7th Cir. 2019), as amended (Aug. 9, 2019) ("Illinois courts 'have looked to the standards applicable to analogous federal claims' when evaluating IHRA claims, so we consolidate our analysis on both counts." (quoting *Sangamon Cnty. Sheriff's Dep't v. Ill. Hum. Rights Comm'n*, 908 N.E.2d 39, 50 (Ill. 2009))).

---

[5] Although employment-discrimination plaintiffs must administratively exhaust their claims before suing, courts in the Seventh Circuit have allowed plaintiffs to cure the deficiency by obtaining a right-to-sue letter after filing the complaint. *See, e.g.*, *Sagaitis v. W. Bend Ins. Co.*, 790 F. Supp. 3d 744, 749 (W.D. Wis. 2025) (citing *Perkins v. Silverstein*, 939 F.2d 463, 470–71 (7th Cir. 1991).

[6] These are the claims that are (1) recognizable in Vance's complaint when "liberally" construed, *Perez v. Fenoglio*, 792 F.3d 768, 774 (7th Cir. 2015); and (2) "reasonably related" to his EEOC charge, *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018), which alleged "discrimination [] based on Disability, Retaliation, and involv[ing] issues of Reasonable Accommodation, Discharge," [63-7] at 2. Vance's complaint included certain allegations evincing an intent to assert religious-discrimination claims, [1-2] at 16 ("I was suspended because someone didn't like me listening to gospel music and HR said there [sic] was offended."), but he has not administratively exhausted those claims, *Riley*, 909 F.3d at 189.

### A.    Failure to Accommodate

Vance believes that Amazon failed to accommodate his foot injury by requiring him to wear steel-toe, composite, or slip-on protective footwear. [1-2] at 16. The ADA requires employers to reasonably accommodate "the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To sustain a failure-to-accommodate claim under the ADA, a plaintiff must establish that: (1) he had a disability; (2) he was able to perform the essential functions of the job either with or without reasonable accommodation; (3) the employer was aware of his disability; and (4) the employer failed to reasonably accommodate the disability. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 224 (7th Cir. 2015). The undisputed facts suggest that Vance asked for an accommodation two times: once in April 2022, *see* [63] ¶¶ 24–25, and once in September 2022, *id.* ¶ 28. The Court examines each request separately.

### 1.    Vance's April 2022 Accommodation Request

Vance cannot establish a failure-to-accommodate claim arising from his April 2022 request. There can be no failure-to-accommodate claim when the plaintiff received—even if informally—the accommodation he asked for. *See Simpson v. DeJoy*, No. 21-1547, 2021 WL 6124885, at *2 (7th Cir. Dec. 28, 2021); *see also Molumby v. Averill*, No. 4:23-CV-04152-SLD, 2025 WL 697648, at *5 (C.D. Ill. Mar. 4, 2025) (holding that plaintiff could not state a failure-to-accommodate claim based on defendant's denial of her request for permanent telework when she had been allowed to telework through successive "temporary" accommodations); *Solloway v. White,* No. 1:13-CV-03827-TWT-WEJ, 2017 WL 1170895, at *27 (N.D. Ga. Feb. 15,

2017) (recommending granting defendant's motion for summary judgment on a failure-to-accommodate claim because plaintiff "was always reasonably accommodated, even though [her employer] did not formally describe this arrangement as such"), *report and recommendation adopted*, No. 1:13-CV-3827-TWT, 2017 WL 1134460 (N.D. Ga. Mar. 27, 2017).

Here, it is undisputed that Amazon documented that Vance was "looking for an accommodation for the MYS shoe," [63] ¶ 25, and that an Amazon accommodations consultant closed Vance's request case less than a week later, *id.* ¶ 26. Amazon's Rule 56.1 statement does not say what happened next, but Vance insists that from "April of '22 up to September of '22, [he] was able to wear [his] own shoes" instead of "wearing steel toes." [63-1] at 119:16–20. Amazon does not argue otherwise. Vance got what he sought; that is enough to sink his claim in connection with his April 2022 accommodation request. *See Solloway*, 2017 1170895, at *27.

### 2. Vance's September 2022 Accommodation Request

Amazon believes that Vance cannot establish a failure-to-accommodate claim arising from his September accommodation request because he caused a breakdown in the interactive process. [64] at 15–16. The Court agrees. Although an employer must reasonably accommodate the limitations of an employee with a disability, 42 U.S.C. § 1211(b)(5)(A), it needn't do so in the exact way the employee would like, *see Yochim v. Carson*, 935 F.3d 586, 591 (7th Cir. 2019). And it only needs to accommodate the precise limitations of which it has been informed. *See Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009). So, the employer may engage the employee in an "interactive process" to help it identify a reasonable and

appropriate accommodation. *Igasaki v. Ill. Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 961 (7th Cir. 2021).

An employee who causes that process to break down cannot hold his employer liable. *See Lawler v. Peoria Sch. Dist. No. 150*, 837 F.3d 779, 786 (7th Cir. 2016). One way an employee does so is by rejecting a reasonable alternative accommodation. *See Yochim*, 935 F.3d at 591–92; *Hoppe v. Lewis Univ.*, 692 F.3d 833, 840 (7th Cir. 2012). He can also do so by ignoring his employer's request for medical documentation clarifying the extent of his disability. *See Keen v. Merck Sharp and Dohme Corp.*, 819 F. App'x 423, 427 (7th Cir. 2017) (citing *Brown v. Milwaukee Bd. of Sch. Dirs.*, 855 F.3d 818, 821, 824 (7th Cir. 2017)).

Here, it is undisputed that Amazon informed Vance that it could not accommodate his request to wear his own flexible netted shoes. [63] ¶ 28. At the same time, it put Vance on paid leave while it engaged him in the interactive process. *Id.* ¶¶ 30, 31. Amazon eventually asked Vance to make an appointment for a custom-shoe fitting; he never did. *Id.* ¶ 33. Vance does not explain that failure in his briefing, nor does he identify any evidence showing that the custom shoes would be inadequate or unreasonable. *See generally* [66]. A reasonable jury would thus be forced to conclude that Vance caused a breakdown in the interactive process by rejecting custom shoes as an alternative accommodation. *See Yochim*, 935 F.3d at 591–92.

It is also undisputed that, after Vance refused to try custom shoes, he sought an extension of his medical leave but never gave Amazon the supporting medical documentation that it requested. [63] ¶ 36. Amazon denied the extension, but Vance

9

does not explain why responsibility for the denial lies with anyone but himself. *Id.* ¶¶ 36, 40–41. A reasonable jury would have to find Vance at fault for the failure of the interactive process. *See Keen*, 819 F. App'x at 427.

*　　*　　*

Because no reasonable jury could conclude that Amazon failed to reasonably accommodate Vance's disability, the Court grants summary judgment on Vance's failure-to-accommodate claims.

### B.    Disparate Treatment

Vance also believes that Amazon discriminated against him on the basis of disability by firing him after putting him on leave. *See* [1-2] at 2. For this claim to survive, Vance must produce evidence that (1) he has a disability; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (3) he suffered an adverse employment action; and (4) the adverse action was because of his disability. *Myers v. Sunman-Dearborn Cmty. Schs.*, 142 F.4th 527, 534 (7th Cir. 2025).

To start, Vance's leave of absence was not in itself an adverse employment action. Providing medical leave "is a form of reasonable accommodation when necessitated by an employee's disability." *Coffey-Sears v. Lyons Twp. High Sch. Dist. 204*, No. 15-cv-08642, 2017 WL 1208439, at *9 (N.D. Ill. Mar. 31, 2017) (collecting cases). And an employer's action cannot be both a reasonable accommodation and an adverse employment action. *See Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 856 (7th Cir. 2019).

10

Here, it is undisputed that Amazon initiated a leave of absence request on Vance's behalf when it denied his request to wear the shoes of his choice instead of protective footwear, [63] ¶¶ 28–29; that Amazon approved the leave "based on ongoing communication and review related to his accommodation request," *id.* ¶ 31; and that, during the leave, Amazon discussed other possible accommodations with Vance, which he rejected, *id.* ¶ 33. From those facts, a reasonable jury could conclude only that the leave of absence was a reasonable response by Amazon to Vance's accommodation request—and therefore cannot constitute an adverse employment action. *See Koty v. Zaruba*, 15 C 2600, 2017 WL 4150684, at *7 (N.D. Ill. Sep. 19, 2017) ("[R]easonable actions taken to accommodate [a physical work] limitation or request cannot be considered adverse.") (citing *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000)).

Nor can Vance's termination give rise to a disability discrimination claim. To advance such a claim, Vance would have to present evidence that he was fired "because of" a disability. *Myers*, 142 F.4th at 534. That means that, if Amazon produces evidence that it had a legitimate, non-discriminatory reason for firing him, his claim can survive only if he produces direct evidence of discriminatory intent or some other evidence that Amazon's stated reason was pretextual. *See Brooks v. Avancez*, 39 F.4th 424, 434 (7th Cir. 2022).

The undisputed facts satisfy Amazon's burden on summary judgment: Vance failed to provide the documentation Amazon requested to support his leave-extension request, [63] ¶¶ 35, 36, 40; he did not return to work when his approved leave ended,

11

*id.* ¶ 41; and Amazon terminated him for that reason, *id. See Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 854 (7th Cir. 2015); *Moore-Fotso v. Bd. of Educ.*, 211 F. Supp. 3d 1012, 1033 (N.D. Ill. 2016) ("It seems self-evident that an employer is acting with a legitimate, nondiscriminatory reason in terminating an employee who simply fails to report to work and does not adequately explain his absence." (quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1114–15 (7th Cir. 1992))). Vance must therefore proffer some evidence of pretext or discriminatory intent. *See Brooks*, 39 F.4th at 434. He has not.

Vance did testify that a non-disabled employee named "Bruce" was treated better than he was because Bruce was never reprimanded for "last amnesty stow," [63] ¶ 21, a policy by which Amazon employees are held responsible when merchandise falls out of its storage container, [63-1] at 368:2–10. But Vance has presented no evidence that the same decisionmaker decided (1) to reprimand Vance for last amnesty stow; (2) not to reprimand Bruce for last amnesty stow; and (3) to terminate Vance. Without a common decisionmaker between those decisions, the Court can draw no inference of pretext or discriminatory intent. *See Coleman v. Donahoe*, 667 F.3d 835, 847–48 (7th Cir. 2012). Because Vance has presented no evidence that would allow a reasonable jury to conclude that his leave of absence was an adverse employment action or that his termination was "because of" his disability, the Court grants summary judgment as to his disparate-treatment claims.

### C.    Hostile Work Environment

Amazon next seeks summary judgment as to Vance's hostile work environment claim. To establish the claim, Vance must present evidence that (1) he was subject to

unwelcome harassment; (2) the harassment was based on his disability; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Ford*, 942 F.3d at 856. Vance has presented no evidence to support this claim, but the Court assesses whether the undisputed facts do so. It first considers whether there is evidence that any instances of harassment were based on Vance's purported disability and then considers whether any disability-based harassment was sufficiently severe or pervasive.

It is undisputed that Vance testified about several incidents that he characterized as harassment:

- An area manager told him he wasn't supposed to be on his phone. [63] ¶ 17.

- Several times, area managers gave away Vance's station when he did not get back from lunch with the rest of his team. *Id.* ¶ 19.

- Male "water spiders" gave better pallets to non-disabled female "stowers" because they "fancied" them. *Id.* ¶ 20.

- Vance was suspended for discussing oral sex that took place on an episode of *Love and HipHop: Atlanta*. *Id.* ¶ 22.

Vance presents no evidence, and there are no undisputed facts, suggesting that any of these incidents related to Vance's purported disability (his inability to wear protective footwear).

Vance testified about three other incidents that *were* related to his purported disability:

- A safety team member told Vance he was "not supposed to be in the building without steel toes" and "[t]hose are not steel toes." *Id.* ¶ 14.

13

- Vance and a safety team member had a tense exchange about Vance's footwear, and the team member called Vance a "motherfucker." *Id.* ¶ 15.

- An area manager followed Vance and told him he was supposed to be wearing steel-toed shoes. *Id.* ¶ 16.

The question is whether those three incidents amount to harassment that is so severe or pervasive that it changed the terms or conditions of Vance's employment and created a hostile work environment. *Ford*, 942 F.3d at 856. Answering this question requires considering "the totality of the circumstances," *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018), to determine whether the "workplace is permeated with discriminatory intimidation, ridicule, and insult," *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018). Generally, "off-color comments, isolated incidents, teasing, and other unpleasantries" are not enough. *Swyear*, 911 F.3d at 881. For example, in *Abrego*, the appeals court held that the plaintiff's supervisors' short tempers, hostility, unfair criticism, disrespectfulness, and excessive monitoring did not create a hostile workplace. 907 F.3d at 1015.

Here, only one of the three incidents (spread, incidentally, over six months), even approaches hostility or disrespectfulness: the incident in which a member of the safety team called Vance a "motherfucker." [63] ¶ 15. Hostility and disrespectfulness weren't enough in *Abrego*, and this incident is not enough here. No reasonable jury could find that Vance was subject to disability-based harassment so severe or pervasive that it changed the terms or conditions of his employment, so the Court grants summary judgment as to Vance's hostile work environment claims.

14

### D.     Retaliation

Amazon seeks summary judgment as to Vance's retaliation claim. For this claim to survive summary judgment, Vance must produce evidence that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a "but-for" causal connection between the two. *Kotaska v. Fed. Exp. Corp.*, 966 F.3d 624, 632 (7th Cir. 2020). Amazon contends, and the Court agrees, that Vance has not presented any evidence establishing a causal link between any retaliatory acts and any statutorily protected activity. [64] at 22–23.

Vance has not connected the incidents in which area managers gave away his workstation when he did not return from lunch with the rest of his team to any statutorily protected activity. Requesting an accommodation is a statutorily protected activity, *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814–15 (7th Cir. 2015), but "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Cole v. Bd. of Tr. of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016). Here, it is undisputed that Vance testified that the reason that Area Managers repeatedly gave away his station when he did not get back from lunch at the same time as the rest of his team was because he "had an opinion" and "speak[s] out about things that's wrong." [63] ¶ 19. Vance's having an opinion and speaking out are complaints in the most general of terms, and he provides no evidence establishing a connection to a protected class. Nor does he present any evidence suggesting that these incidents related to any of his accommodation requests.

15

Vance was placed on paid leave and ultimately terminated after requesting an accommodation, *id.* ¶¶ 29, 31, 41, but neither of those incidents can give rise to a retaliation claim. As already discussed, the leave of absence was a reasonable response to Vance's request and therefore can't be an adverse employment action for purposes of his discrimination claim. *See* section III.B, *supra*. The same is true for purposes of his retaliation claim. *See Ford*, 942 F.3d at 856.

Termination, on the other hand, is a materially adverse employment action. *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). So the question is whether Vance has produced evidence showing that his accommodation request (or any other protected activity) was its but-for cause. *Kotaska*, 966 F.3d at 632. In other words, Vance must show that Amazon would not have fired him unless it had a retaliatory motive. *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019). But, as discussed above, the undisputed facts establish that Amazon had a legitimate reason for firing Vance—he didn't return to work when his leave ended. *See* section III.B, *supra*. Vance has offered no evidence showing that Amazon fired Vance in retaliation for his accommodation request.

Because Vance has put forth no evidence showing that statutorily protected activity was the but-for cause of a materially adverse employment action, the Court grants summary judgment as to his retaliation claim.

16

## IV.    Conclusion

For the foregoing reasons, the Court grants defendant Amazon's motion for summary judgment [62] as to all claims. Civil case terminated.

ENTER:

_____
Georgia N. Alexakis
United States District Judge

Date: 5/12/2026

17